# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-30468

In The Matter Of:  KENNETH CHARLES SAVAGE; SHARON M SAVAGE

Debtors

----------------------------------------------

KENNETH CHARLES SAVAGE; SHARON M SAVAGE

Appellants

v.

PORT LOUIS OWNERS ASSOCIATION, INC

Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2:07-CV-3067

Before KING, GARWOOD, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Kenneth Charles and Sharon M. Savage appeal the judgment of the district court, which affirmed the bankruptcy court's judgment that their debt

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to the Port Louis Owners Association ("PLOA") is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## I.

The Savages owned a condominium in the Port Louis condominium development and were members of the PLOA. On January 29, 2004, the Savages' condominium, and the adjoining condominium, which was owned by David Wilbur, sustained substantial damage from a fire of unknown origin in the common wall between the two units. The fire caused extensive damage to both units. Further damage was caused by water from the fire hoses used to put out the fire.

The PLOA had secured hazard insurance from Scottsdale Insurance Company ("Scottsdale") for the units of its members and for the common areas of the development. The policy insured property owned by the PLOA. The Savages were not named or additional insureds under the policy.[1]

Shortly after the fire, Mr. Savage met with David Burke, who at that time was the president of the PLOA, and with the adjuster for Scottsdale. Mr. Savage testified that Burke and the adjuster inspected the damage and, during the inspection, Burke pointed out to the adjuster damages covered by insurance and those not covered. Burke and Scottsdale's adjuster took the position that the policy did not cover damages to the interior of the Savages' unit. Mr. Savage objected to this interpretation of the policy, contending that the policy covered all of the damage to his condominium.

Neil Rudd, who was the president of the PLOA at the time of trial in the bankruptcy court, testified that the Scottsdale policy covered damages to the buildings from the exterior walls through and up to, but not including, the inside

---

[1] The insurance policy was not introduced into evidence in the bankruptcy court. Our description of its provisions is based on the testimony presented at trial in the bankruptcy court.

layer of paint; damage to the roof down to the interior layer of paint on the ceiling; and damage from the ground through the subfloor, but not the finished flooring. He testified that costs of replacement of interior lighting fixtures, appliances, finish millwork, bathroom fixtures, cabinetry, and paint were not covered under the policy. Mr. Savage disagreed with Mr. Rudd's interpretation of what was covered. He testified that anything that fell out of the house if the house was turned upside down was not covered, but that everything that was part of the structure was covered. The policy itself was never introduced. The Savages did not have their own insurance covering their contents. According to Mr. Savage, his mortgage lender told him that the Scottsdale policy was all he needed, except that he had to provide his own flood coverage.

Following the fire, both units were uninhabitable. Because Scottsdale took the position that its policy did not cover the interior of the units or the risk of loss to the Savages, the policy did not pay for the Savages' loss of use of the premises.

According to the testimony presented at trial, the PLOA was responsible under its bylaws to handle the adjustment of the insurance claim and to coordinate the reconstruction of the fire-damaged units. When the PLOA had made no progress by April 2004, the PLOA board of directors, at the Savages' request, gave the Savages the authority to administer the insurance claim with Scottsdale.

A bank account, referred to as the "Fire Account," was established by the PLOA. The PLOA board gave the Savages the authority to manage the insurance claim and the repairs to their unit and Wilbur's unit, and gave the Savages signature authority on the Fire Account.

The only deposits made to the Fire Account were the proceeds received from the PLOA insurance policy and the insurance deductible deposited by the PLOA.

Scottsdale's initial adjustment was for $86,252.25 for both units. The Savages and Wilbur disputed this adjustment because they believed it was insufficient. The Savages requested a new adjustment and obtained an estimate of $162,922.44 for restoration of their unit. Of that amount, $105,901.86 is the estimated cost of repairing the roof, exterior structure to the interior layer of paint, and subfloor. The remainder ($57,830.58) is the cost of restoration of the interior space.

The Savages retained an attorney. He demanded a timely resolution of the claim from Scottsdale and asserted claims against the PLOA for delays in resolution of the matter and for failing to assert the Savages' claims against Scottsdale for loss of property.

The Savages obtained three bids for reconstruction of both units. Although the lowest bid that they received was $117,000, the Savages chose to contract with Marino Construction for a total of $209,760 for repairs to both units, because Marino was available immediately. The PLOA was aware of the cost of the Marino contract, and the bankruptcy court found that the PLOA at least tacitly acquiesced in the execution of the Marino contract. The Savages sued Scottsdale for the additional costs to repair the structure, in addition to the costs of restoring the interior. That suit was pending at the time of the trial in the bankruptcy court.

After beginning work, Marino encountered problems with mold and could not proceed with the repairs. Scottsdale obtained a plan for remediation and a bid of $33,326.19. It sent a check for that amount to the PLOA. The Savages deposited the check into the Fire Account. Additional insurance proceeds from Scottsdale were received later and deposited into the Fire Account. The total payments received from Scottsdale and the PLOA (for the insurance deductible) were $176,546.16.

4

The Savages used some of the money in the Fire Account for additional living expenses for themselves and Wilbur ($21,250 for the Savages and $3,900 for Wilbur). Mr. Savage testified that these expenses were incurred as a result of their having to pay rent while still paying the mortgage on their burned, uninhabitable condominiums. They also used $4,475 of the funds in the Fire Account to pay attorney's fees; $25,491.39 for interior restoration expenses (flooring, bathroom fixtures, cabinetry, recessed lighting, and windows); and $1,750 for storage. Mr. Savage testified that he relied on the advice of counsel that these expenditures were authorized. Savage paid these expenses by check drawn on the fire account. No argument is made that Savage attempted to disguise any of these payments.

Before the repairs were completed, the condominiums were damaged again by Hurricane Katrina. As of February 2007, when the case was tried in the bankruptcy court, the Savages' and Wilbur's condominiums were still uninhabitable.

## II.

The Savages filed a Chapter 7 bankruptcy petition in March 2006. The PLOA filed an adversary complaint against the Savages, alleging that the Savages had induced the PLOA to tender the insurance proceeds to them based upon their representations that the proceeds would be utilized to conduct repairs covered under the policy. The PLOA alleged further that the Savages' representations were false and fraudulent and that the Savages had converted the insurance proceeds to their own personal use and benefit, without completing the repairs. The PLOA alleged that the Savages were indebted to it for use of the insurance proceeds for unauthorized expenditures and that the debt was non-dischargeable under the Bankruptcy Code, 11 U.S.C. § 523.

At trial, the PLOA objected to the Savages' use of funds from the Fire Account for living expenses, attorney's fees, interior restoration expenses, and

storage. When the PLOA's attorney tried to cross-examine Mr. Savage about the policy not providing for living expenses, the Savages' attorney objected on the ground that the policy had not been introduced into evidence. The bankruptcy court nevertheless found that those expenses were not covered by the Scottsdale insurance policy. The court also found that the PLOA gave the Savages control over the insurance claim and the proceeds of the PLOA policy, making them fiduciaries of the PLOA and thus responsible for the proper use of its assets. The court further found that the Savages were well aware that the Fire Account, provided from proceeds of the PLOA policy, lacked sufficient funds to complete the estimated structural damages to the building covered by the policy, and yet they elected to use over $56,000 for their personal benefit. The court held that the Savages embezzled the funds and that they intended to defraud the PLOA when they reimbursed themselves for living expenses, attorney's fees, storage fees, and interior building materials. The bankruptcy court entered judgment for the PLOA, holding that the Savages were indebted to the PLOA in the amount of $56,866.39, and that the debt was non-dischargeable under 11 U.S.C. § 523(a)(4). The Savages appealed to the district court, which affirmed the judgment of the bankruptcy court.

## III.

Before us, the Savages argue that the bankruptcy court clearly erred in finding that they had embezzled the insurance proceeds. They contend that because the Scottsdale policy was not offered or admitted into evidence, there is nothing to support the bankruptcy court's findings about what the policy covered and did not cover. The Savages further argue that they relied on legal advice that Scottsdale was liable for the living expenses and other expenditures because of its improper handling and payment of the claim.

Section 523(a)(4) of the Bankruptcy Code provides that debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may

not be discharged in bankruptcy. 11 U.S.C. § 523(a)(4). This exception is "intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J. D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987)). "The term 'while acting in a fiduciary capacity' does not qualify the words 'embezzlement' or 'larceny.'" 4 COLLIER ON BANKRUPTCY ¶523.10[2], at 523-76 (15th ed. rev.). Accordingly, the existence of a fiduciary relationship between the debtor and creditor is not necessary in order for a debt for embezzlement or larceny to be non-dischargeable. *Id.*

"Embezzlement is defined for purposes of § 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller*, 156 F.3d at 602 (internal quotation marks and citations omitted). "To meet the definition of 'embezzlement,' there must be proof of the debtor's fraudulent intent in taking the property." *Id.* at 602-03. The PLOA had the burden of proving non-dischargeability. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

We review the bankruptcy court's decision under the same standards applied by the district court: "conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." *Century Indemnity Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000). Under the clearly erroneous standard applied to the bankruptcy court's factual findings, "if the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the

evidence differently." *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 814 (5th Cir. 1992) (internal quotation marks and citation omitted).

The bankruptcy court's finding that the Savages acted with fraudulent intent when they spent funds from the Fire Account for living expenses, attorney's fees, storage costs, and interior repairs was based on its determination that the Scottsdale policy did not provide coverage for such expenses. The court found the Savages knew that the insurance proceeds were insufficient to cover the structural damage to the building, and that they had no basis for their belief that they could recover damages from Scottsdale for the unauthorized expenditures for items not covered by the policy. As we have noted previously, the Scottsdale insurance policy was not offered or admitted into evidence at trial. Mr. Savage and Mr. Rudd gave conflicting testimony about what the policy covered and what it did not cover. The Savages now contend that the bankruptcy court's factual findings are not adequately supported because the insurance policy was not in evidence. Moreover, there was no testimony or evidence that the Savages were placed on notice by the PLOA of specific restrictions on the expenditures of the insurance proceeds.

By failing to introduce the insurance policy and by failing to present any evidence that the PLOA communicated any restrictions on the use of the insurance proceeds, we conclude that the PLOA failed to carry its burden of proving that the Savages actually embezzled funds belonging to the PLOA. Although Rudd testified that the PLOA board did not authorize the Savages to make payments from the Fire Account to Mr. Savage, to cash, to Wilbur, and to the Savages' attorney, the PLOA did not present any evidence that any restrictions or conditions were placed on the Savages' use of the funds in the Fire Account, other than that the funds were to be used "to restore the units" damaged by the fire. The PLOA board, after having done nothing to restore the units for four months following the fire, turned over the insurance proceeds to

the Savages and gave them complete authority to handle the restoration of the damaged units. As we have said, there is no evidence that the PLOA board attached any conditions to the use of the funds; nor does the record indicate that it engaged in any oversight to determine that the funds were expended properly.

Because the PLOA did not introduce the insurance policy into evidence, there is no evidentiary basis for the bankruptcy court's determinations of what damages were covered by the policy, and circumstances under which otherwise excluded damages might be covered. Both Mr. Rudd and Mr. Savage testified that they had read the policy, and each was adamant in his interpretation of the policy's coverage. Rudd testified that the policy did not cover the costs of replacement of interior lighting fixtures, appliances, millwork, bathroom fixtures, cabinets, and paint. Mr. Savage took the position that cabinetry, lighting, flooring, and fixtures were covered by the policy because they were part of the "structure." When the court asked Mr. Savage if he understood that the Scottsdale policy covered the structural damage to the building and that it did not include damage to the interior spaces, Mr. Savage responded: "No, it included both." It was the PLOA's burden to prove that the Savages spent insurance proceeds on items not covered by the insurance policy. Without the policy, coverage was arguable, and when combined with no express restrictions on the insurance proceeds, the PLOA failed to carry its burden of demonstrating the intent necessary for a finding of embezzlement.

Finally, Mr. Savage testified that, when making the challenged expenditures, they relied on the advice of counsel that Scottsdale would be liable for their living expenses and the other expenditures because of its improper handling and payment of the claim. By failing to rebut this testimony, the PLOA further failed to carry its burden of proving that the Savages made the challenged expenditures with fraudulent intent.

For the foregoing reasons, we conclude that the bankruptcy court clearly erred in finding that the Savages acted with fraudulent intent.

III.

For the foregoing reasons, the judgment of the district court, affirming the judgment of the bankruptcy court, is REVERSED, and the case is REMANDED to the district court, with instructions to REMAND it to the bankruptcy court for entry of judgment consistent with this opinion.

REVERSED and REMANDED.